IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW STEVENS, individually and on behalf of all persons similarly situated, | : : : |
| Plaintiff, | : CIVIL ACTION NO.: : |
| v. | : Collective Action : |
| USA TODAY SPORTS MEDIA GROUP, LLC and GANNETT CO., INC. | : : : |
| Defendants. | : : |

**COLLECTIVE ACTION COMPLAINT**

Plaintiff Matthew Stevens ("Stevens" or "Plaintiff") through his undersigned counsel, individually and on behalf of all persons similarly situated, files this Collective Action Complaint against Defendant USA Today Sports Media Group, LLC ("USA Today") and Defendant Gannett Co., Inc. ("Gannett") (collectively "Defendants"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"). Plaintiff Stevens also seeks relief herein in his individual capacity under the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101 *et seq.* ("PMWA").

**JURISDICTION AND VENUE**

1.  Jurisdiction over Plaintiff's FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. Plaintiff's claims arising under state law are proper under 28 U.S.C. § 1367.

2.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391. The events giving rise to Plaintiff's claims occurred within this District, as Plaintiff worked for Defendants in this District. Defendants each conduct business in this District. Defendant Gannett is registered to do business in Pennsylvania and has appointed an agent for service of process in Harrisburg, PA. 42 Pa. C.S. § 5301.

1

## PARTIES

3. Plaintiff Stevens is an individual currently residing in York, Pennsylvania. She was employed by Defendants as a Site Editor from approximately January 2017 through approximately August 2021. Pursuant to 29 U.S.C. § 216(b), Plaintiff Mathews has consented in writing to being a party plaintiff in this action. Ex. 1, Consent Form.

4. Defendant USA Today is a Delaware corporation headquartered in McLean, Virginia, and operating nationwide.

5. Defendant Gannett is a Delaware corporation headquartered in McLean, Virginia, and operating nationwide. Gannett is the owner of USA Today. Gannett is licensed to do business in Pennsylvania and has appointed an agent for service of process located in Harrisburg, Pennsylvania.

6. Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

7. Defendants' annual gross volume of business exceeds $500,000.

## CLASS DEFINITION

8. Plaintiff brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b) as a collective action on behalf of himself and the following class of potential opt-in litigants:

> All current or former Site Editors who performed work in the United States for USA Today Sports Media Group within the past three years and who were classified as independent contractors (the "FLSA Class" or "Site Editors").

9. Plaintiff reserves the right to redefine the FLSA Class prior to notice or class certification, and thereafter, as necessary.

## **FACTS**

10. Effective January 2016, Plaintiff Stevens worked pursuant to a "Contractor Agreement," Ex. 2, ("Editor Agreement"), which to the extent lawful, governed the terms of the employment relationship between Stevens and Defendants.

11. From approximately January 2017 through approximately March 2021, Plaintiff served as a Site Editor for USA Today's "Ravens Wire" website, which is Defendants' team site for the Baltimore Ravens, a National Football League ("NFL") team.

12. Plaintiff's Editor Agreement obligated him to create content to place on Ravens Wire. Editor Agreement Ex. 2.

13. During all times relevant to this action, Neal Coolong served as Defendants' NFL Editor all of its NFL team sites, including Ravens Wire. Coolong's role was to hire and supervise all NFL Site Editors at USA Today, including Plaintiff Stevens.

14. In approximately June 2021, USA Today began to employ intermediate managers or "Regional Editors" in the NFL division for each conference division (e.g., NFC West) to directly manage the Site Editors for teams in their respective conference divisions. All of the Regional Editors were supervised by Coolong.

15. USA Today's "Wire Network" includes team sites for approximately 100 professional teams, each of which contained at least one Site Editor.

16. During Stevens' employment, among other duties carried out in furtherance of his employment with Defendants, Stevens regularly watched and analyzed Ravens games and other team news, wrote and published approximately 40 sports articles per week (more during peak times), managed other paid and unpaid writers (which included relaying Defendants' directives from Coolong, co-founded Steve Henson and later SMG management Thomas Neumann down to

the writers), edited and approved writers' articles, monitored search engine optimization data, and managed comment sections on the Ravens Wire website. Stevens performed his work remotely from York, Pennsylvania.

17. Stevens also managed Ravens Wire's Twitter and Facebook social media accounts. Stevens would share links to Ravens Wire articles, as well as other team information. Stevens "live Tweeted" during games in order to give readers play-by-play information about the team's performance.

18. While Site Editor, Stevens regularly worked approximately seventy (70) hours per week. From July 2020 through the end of his employment as Site Editor, Stevens was paid between approximately $2,250 to $3,500 per month, which included flat monthly payments of approximately $2,250, plus modest bonuses if certain production metrics were met such as reader page views. Stevens' pay was thus approximately $7.47 to $11.63 per hour (without any overtime premium), or $6.16 to $9.58 per hour (accounting for overtime hours as being 1.5x regular time hours). This is less than the federal and Pennsylvania minimum wage required by the PMWA.

19. At no time was Stevens paid an overtime premium for her hours worked in excess of forty (40) in a week.

## EMPLOYMENT RELATIONSHIP

20. Courts within the Third Circuit weigh several non-exclusive factors in order to determine whether, as a matter of "economic reality," an employment relationship exists. In *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985), the Court of Appeals for the Third Circuit considered the following factors:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
4) whether the service rendered requires a special skill;
5) the degree of permanence of the working relationship;
6) whether the service rendered is an integral part of the alleged employer's business.

*Defendants Hired, Fired and Exercised Control Over Site Editors*

21. In January 2016, Defendants, per NFL Editor Neal Coolong, interviewed Stevens for employment as Site Editor of Panthers Wire (and later in January 2017, approved him to continue as the Site Editor of Ravens Wire). On behalf of Defendants, Mr. Coolong hired Stevens as Site Editor.

22. Defendants at times fired Site Editors when they did not follow Defendants' policies and procedures or meet Defendants' performance metrics.

23. Defendants maintained control over the manner in which Site Editors performed their services.

24. Defendants required Site Editors, whether personally or through Site Editors' supervision of their site staff writers, to cover their team's games and other team news, and to create online content based on those games and team news.

25. Site Editors regularly watched games and wrote recaps, previews, social media posts and other content concerning their respective teams.

26. Defendants retained the right to edit the work product produced by Site Editors and on occasion, actually exercised such control.

27. Site Editors were prohibited from receiving advertising revenue from their team sites (rather, Defendants received all advertising revenue). For purposes of enhancing Defendants' web search rankings, and therefore its advertising revenue, Site Editors were required to add certain search terms to their articles, title articles in a certain way, and draft the articles of a certain

length.

28. For the purpose of maximizing Defendants' ad revenue, and despite the fact that Site Editors never shared in such revenue, Defendants regularly encouraged and pressured its Site Editors to meet and exceed content posting goals and requirements.

*Defendants Determined Site Editors' Rate and Method of Payment;*
*Site Editors Had Minimal Opportunity for Profit or Loss and*
*Did Not Materially Invest in Defendants' Business*

29. Defendants set the terms of compensation through form adhesion contracts they entered into with Site Editors.

30. In their employment with Defendants, Site Editors possessed no significant opportunity for profit or for loss. Although under the Editor Agreements, Site Editors were ostensibly paid a bonus based on site traffic, Site Editors rarely received more than a few hundred dollars per month in such bonuses.

31. It was common knowledge at Defendants that Site Editors were not allowed to enter into advertisement agreements, much less receive any revenue from advertisements on the team sites.

32. Site Editors were not required to invest in equipment or materials with respect to their employment at Defendants. Site Editors merely used their existing home computers and smart phones to perform services for Defendants.

*Site Editors' Services Required No Special Skill or Independent Initiative*

33. Site Editors' services required no special skill. For example, no specific academic qualifications were required to be a Site Editor, much less a college degree. Similarly, no specific professional experience was required.

*Site Editors' Employment Was in the Nature of a Permanent Relationship*

34. Site Editors' employment with Defendants was in the nature of a permanent relationship. Site Editors signed and labored under the terms of Editor Agreements and regularly worked approximately well in excess of 40 hours per week for Defendants.

### *Site Editors' Services Were An Integral Part of Defendants' Business*

35. Defendants are a media company and Defendants are in the business of sports media. Defendants' very business could not exist without the content created by its writers, including Site Editors. Indeed, the content created by its writers constitutes the entirety of the product offered by Defendants. Without the existence of the content published on Site Editors' team sites, advertisers would not pay Defendants to advertise on these team sites.

36. As a matter of economic reality, Plaintiff and Site Editors were dependent on Defendants for continued employment and income, and therefore were employees of Defendants. Given the number of hours Site Editors worked for Defendants, the possibility and extent of outside employment was heavily curtailed.

### **Defendants Are a Single Employer**

37. At any given point in time within the last three years, one or both of USA Today and Gannett directly employed Plaintiff and the FLSA Class.

38. Defendants were together functionally integrated in that they utilized the same or similar facilities, equipment, tools, and labor relations personnel. Defendants each implemented and carried out the same labor relations policies including the compensation policies applicable to Plaintiff and the FLSA Class. Defendants each exhibited common ownership and control, including through at least Gannett, its parent company Gate House Media, and their respective shareholders and officers.

39. Thus, Defendants constitute a single employer.

## Overtime Premium Pay and Overtime Gap Time Pay Is Owed at the Highest Applicable State or Locally Mandated Rate

40. When overtime pay is required under the FLSA, the "regular rate of pay" under 29 U.S.C. § 207 may be set by state or local statute, such as a local minimum wage law. *See* 29 C.F.R. 778.5 ("**Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum**, for the words 'regular rate at which he is employed' as used in section 7 [regarding overtime] must be construed to mean the regular rate at which he is lawfully employed.") (emphasis added).

41. Furthermore, in weeks in which overtime hours were worked, an employee may recover straight time wages at the applicable locally mandated rate. *Conner v. Cleveland Cty.*, 22 F.4th 412, 416 (4th Cir. 2022) (overtime gap time claims actionable).

42. As Plaintiff Stevens was not paid either the locally mandated minimum wage under Pennsylvania law, or any overtime premium pay, he is entitled to pursue claims under 29 U.S.C. § 207 for unpaid straight time wages at the locally mandated minimum wage and overtime pay at 150% of her legally applicable regular rate of pay.

43. All FLSA Class members are similarly entitled to pursue claims for unpaid overtime wages at 150% of their applicable regular rate of pay (pursuant to state or local law), as well as overtime gap time at the legally applicable regular rate of pay.

## WILLFULNESS

44. In September 2017, Plaintiffs Cheryl Bradley and others filed an FLSA Collective Action with facts very similar to the instant case, *Bradley v. Vox Media, Inc*. (D.D.C. No. 17-1791) (the "*Bradley* Action"). The *Bradley* plaintiffs alleged that the Defendant Vox Media had

misclassified its Site Managers (who managed sports websites for Vox Media's sports division "SB Nation") as independent contractors, in violation of the FLSA. The *Bradley* Action was widely reported in the sports and legal media.[1] Senior management of Defendants were aware of the *Bradley* Action since its inception.

45. On September 4, 2018, Judge Collyer denied Vox Media's partial motion to dismiss the *Bradley* plaintiffs' willfulness claims under the FLSA. *Bradley*, ECF Nos. 29, 30; *Bradley v. Vox Media, Inc.*, 320 F. Supp. 3d 178, 2018 WH Cases2d 317956 (D.D.C. 2018). Senior management of Defendants were aware of this opinion.

46. On September 5, 2018, the sports website Deadspin published an article revealing FanSided's treatment of its Site Experts and other content creator employees, which included negative feedback from many such employees concerning Defendants' labor and pay practices. The article likened the labor and pay practices of Fansided and SB Nation and specifically referenced the *Bradley Action*. Senior management at Defendants were aware of this Deadspin article and its contents.

47. On March 6, 2019, Judge Collyer granted the *Bradley* plaintiffs' motion to conditionally certify a collective action of Site Managers under the FLSA. *Bradley*, ECF Nos. 36, 37; *Bradley v. Vox Media, Inc.*, No. 17-1791 (RMC), 2019 BL 75887 (D.D.C. Mar. 06, 2019). This too was reported in the legal media.[2] Senior management at Defendants were aware of this opinion.

---

[1] *See, e.g.*, "Centennial woman who ran Avalanche website sues Vox Media on claims that SB Nation broke labor laws," Denver Post, 9/2/2017, *available at*: https://www.denverpost.com/2017/09/02/cheryl-bradley-vox-media-lawsuit/ (last accessed 12/8/2022); "SB Nation Writers, Editors Win Class Status in Overtime Suit," Bloomberg Law, 3/7/2019.

[2] *Supra*, n. 4.

48. In June 2020, Plaintiff Brandon Carusillo, filed an FLSA Collective Action with facts very similar to the instant case and to *Bradley, Carusillo v. FanSided, Inc. et al.,* No. 20-cv-4766-JPO (S.D.N.Y.) (the "*Carusillo* Action"). Carusillo alleged that the Defendant FanSided had misclassified its Site Experts (who managed sports websites for FanSided's team site network) as independent contractors, in violation of the FLSA. Senior management of Defendants were aware of the *Carusillo* Action since its inception.

49. In September 2021, Judge Oetken denied FanSided's motion to dismiss the complaint and granted Plaintiffs' motion for conditional certification. *Carusillo v. FanSided, Inc.*, No. 20-CV-4766 (JPO), 2021 U.S. Dist. LEXIS 180014 (S.D.N.Y. Sep. 21, 2021). Senior executives at Defendants were aware of this opinion too.

50. In approximately 2021 Neal Coolong stated to Plaintiffs that in view of very similar lawsuits against Vox and FanSided, Neal's superiors at USA Today and Gannett knew the company was going to be sued eventually.

51. Given Defendants' awareness of the *Bradley* and *Carusillo* litigation and awareness resulting from routine due diligence reviews, Defendants knew it was illegal to classify Site Editors as independent contractors and to ensure they were paid overtime premium pay.

52. Despite its continuing knowledge of the illegality of its practices, Defendants willfully and continually refused to pay its Site Editors overtime wages due for overtime hours worked, and thus a three-year statute of limitations is applicable to Site Editors in this matter. *See* 29 U.S.C. § 255(a).

53. Defendants do not maintain accurate records of the actual hours that Site Editors worked each workday and the total hours worked each workweek as required by the FLSA. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain

payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week).

54. Defendants knew that there was a substantial risk that Site Editors were employees and were not exempt from the FLSA's overtime requirements.

55. Defendants are a sophisticated global media business worth in the billions of dollars. Defendants have access to knowledgeable human resource specialists and competent labor counsel.

56. Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions by failing to compensate Site Editors with overtime premium pay of 150% of their regular rates of pay for overtime hours worked, as required by 29 U.S.C. § 207.

## COLLECTIVE ACTION ALLEGATIONS

57. Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Class defined above.

58. Plaintiff desires to pursue his claims on behalf of himself and any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

59. Plaintiff and the FLSA Class are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals were misclassified as independent contractors, worked pursuant to Defendants' previously described common pay practices and, as a result of such practices, were not paid overtime premium pay for overtime hours worked. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping, and payroll practices.

60. Specifically, Defendants paid Plaintiff and the FLSA Class on generally a flat monthly basis, but failed to pay them any overtime premium pay whatsoever (let alone at the

locally mandated regular rate of pay), in violation of 29 U.S.C. § 207.

61. The similarly situated employees are known to Defendants, are readily identifiable, and may be located through Defendants' business and human resource records.

62. Defendants employ many FLSA Class Members. These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime wage compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## COUNT I
## Unpaid Overtime Wage Violation, 29 U.S.C. § 207
## (On Behalf of the FLSA Class)

63. All previous paragraphs are incorporated as though fully set forth herein.

64. The FLSA requires that covered employees be compensated at 150% of their regular hourly rate for all hours worked in excess of 40 each workweek.  *See* 29 U.S.C. § 207.

65. Defendants are subject to the wage requirements of the FLSA because Defendants are each an "employer" under 29 U.S.C. § 203(d).

66. At all relevant times, Defendants have each been an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

67. During all relevant times, Plaintiff and the FLSA Class have been covered employees entitled to the above-described FLSA's protections.  *See* 29 U.S.C. § 203(e).

68. Plaintiff and the FLSA Class are not exempt from the requirements of the FLSA. Plaintiff and the FLSA Class are entitled to be paid at 150% of their regular hourly rate (which is based on the higher of the class members' actually-paid rate of pay or minimum rate of pay set by

state or local law) for all hours worked in excess of 40 each workweek, as well as overtime gap time pay at the legally mandated regular rate of pay. See *Conner v. Cleveland Cty.*, 22 F.4th 412, 415 (4th Cir. 2022) (approving of DOL regulation 29 C.F.R. § 778.315); 29 C.F.R. § 778.5.

69. Defendants' compensation scheme, applicable to Plaintiff and the FLSA Class, failed to comply with 29 U.S.C. § 207.

70. Defendants knowingly failed to compensate Plaintiff and the FLSA Class overtime premium pay for each hour of overtime worked, in violation of 29 U.S.C. § 207.

71. Defendants also failed to make, keep, and preserve records with respect to Plaintiff and the FLSA Class sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

72. In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

73. Pursuant to 29 U.S.C. § 216(b), employers such as Defendants, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages (including overtime wages and overtime gap time pay at the locally mandated rate), liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT II
### Violation of the Pennsylvania Minimum Wage Act
### (Plaintiff Stevens Individually)

74. Plaintiff Stevens, in his individual capacity, re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

75. All previous paragraphs are incorporated as though fully set forth herein.

76. The Pennsylvania Minimum Wage Act of 1968 ("PMWA") requires that covered

employees be compensated for all hours worked. *See* 43 P.S. § 333.104(a) and 34 PA. CODE § 231.21(b).

77. The PMWA also requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at Overtime Rate. *See* 43 P.S. § 333.104(c) and 34 PA. CODE § 231.41.

78. Defendants are subject to the overtime requirements of the PMWA because Defendants are employers under 43 P.S. § 333.103(g).

79. During all relevant times, Plaintiff was a covered employee entitled to the above-described PMWA's protections. *See* 43 P.S. § 333.103(h).

80. Defendants failed to compensate Plaintiff at an Overtime Rate for hours worked in excess of forty (40) hours per week, in violation of 43 P.S. § 333.104(c) and 34 PA. CODE § 231.41.

81. Pursuant 43 P.S. § 333.113, employers, such as Defendants, who fail to pay an employee wages in conformance with the PMWA shall be liable to the employee for the wages or expenses not paid, interest, court costs and attorneys' fees incurred in recovering the unpaid wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief individually and on behalf of all others similarly situated:

   a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

   b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Class members;

   c. Back pay damages (including unpaid minimum wages, overtime gap time wages and overtime wages) and prejudgment interest to the fullest extent permitted under the law;

   d. Liquidated damages and penalties to the fullest extent permitted under the law;

    e.  Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

    f.  Such other and further relief as this Court deems just and proper.

Dated: August 17, 2023

Respectfully Submitted,

/s/ James E. Goodley
James E. Goodley (PA 315331)
Ryan P. McCarthy (PA 323125)
GOODLEY MCCARTHY LLC
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 394-0541
james@gmlaborlaw.com
ryan@gmlaborlaw.com

*Attorneys for Plaintiff and the FLSA Class*